**In re RUSTY JONES, INC., Debtor.**

**Bankruptcy No. 88 B 18708.**

United States Bankruptcy Court, N.D. Illinois, E.D.

Aug. 24, 1989.

James A. Chatz, Norman Newman, Much Shelist Freed Denenberg Ament & Eiger, P.C., Chicago, Ill., for debtor.

Robert Nord, Hinshaw, Culbertson, Moelmann, Hoban & Fuller, Chicago, Ill., for Distributor's Creditor's Committee.

Karen H. Moore, Chicago, Ill., U.S. Trustee.

James Carmel, Carmel, Baker & Marcus, Chicago, Ill., for Official Warranty Claimants Committee.

MEMORANDUM OPINION ON DEBTOR'S APPLICATION TO EMPLOY KNOPFLER, GRAUER, AND GROSSMAN; AND MOTION FOR SUMMARY JUDGMENT THEREON

JACK B. SCHMETTERER,
Bankruptcy Judge.

### Introduction

Debtor Rusty Jones, Inc. moved on April 10, 1989, for authorization for it to employ effective March 1, 1989, Messrs. Alex Knopfler, Donald Grauer, and Jeffrey Grossman. Objections thereto were filed by counsel seeking to represent Distributor's Creditors' Committee, and the U.S. Trustee filed comments generally questioning the propriety of the appointments. Prior to hearing on that motion, Debtor moved for summary judgment on its motion to employ persons. It filed an affidavit of Donald Grauer, a statement of suggested uncontested facts under Local District Rule 12 (adopted as a Rule of our District Bankruptcy Court), and a Memorandum of Law. The U.S. Trustee filed "Comments" generally opposing the Motion for Summary Judgment, and Debtor filed a Reply thereto. No other Rule 12 filings were submitted by any party, and neither of the two committees responded to the summary judgment motion.

In the absence of the undersigned due to illness, this case was temporarily reassigned to Judge Katz who collected the foregoing motion papers and took the summary judgment issue under advisement pending my return to work. That happy event has occurred, so the case has returned to me to deal with this and other matters.

### Can and Should Summary Judgment procedures and Rules apply?

The U.S. Trustee objects to the application of summary judgment procedures to a motion of Debtor for employment of persons who he views as professionals. The Trustee argues that use of this procedure is inappropriate to the instant motion.

As noted by the U.S. Trustee, the summary judgment rule in Bankruptcy usually applies to Adversary cases. Bankr.R. 7056. However, under Bankr.R. 9014 a contested matter raised by motion is governed by Bankr.R. 7056 "unless the Court otherwise directs." For reasons set forth below, the Court now otherwise directs, and will not apply Bankr.R. 7056 to the motion to employ persons even though that motion and objections to it may be considered a form of contested proceeding.

### Factual Background and Pleadings

On the present record, the following facts appear to be undisputed:

On December 5, 1988, Debtor Rusty Jones, Inc. ("Debtor") filed its voluntary Petition under Chapter 11 of the Bankruptcy Code, Title 11 U.S.C. § 101 et seq. It has since operated in possession of the business, pursuant to §§ 1107 and 1108 of the Code.

On the eve of the filing in bankruptcy by this Debtor, the Debtor was "purchased" by Rustco Holdings Inc. ("Rustco") in some fashion not yet fully explained by the parties. (The Distributor Creditors Committee alleges that "Debtor's President testified that the three persons to be employed purchased Debtor's assets and liabilities for $1.00.")

The Debtor represents that Rustco now "owns" 100% of Debtor. This suggests that Rustco acquired 100% of Debtor's common stock, though in the absence of more information that is merely the court's present surmise. The nature of consideration that passed, if any, has not been disclosed.

Rustco is "owned" 60% by Renaissance Holdings I, Inc. (apparently referring to stock ownership), 40% by one or more unidentified persons and/or entities. The common stock of Renaissance Holdings I, Inc. is apparently owned entirely by Renaissance Capital, Ltd. Messrs. Knopfler, Grauer, and Grossman "own" (100% of stock?) Renaissance Capital, Ltd.

To diagram the foregoing as we understand it:

Knopfler, Grauer, and Grossman

own 100% stock in

Renaissance Capital, Ltd.

owns 100% of stock in

Renaissance Holdings I, Inc.

owns 60% of stock in

Rustco Holdings, Inc.

owns 100% of stock in

Rusty Jones, Inc.

Debtor is no longer in the auto under-coating business, but "is in the process of reorganizing and is planning to use and otherwise market its name and trademarks in future business operations." Debtor says that it desires to employ Messrs. Knopfler, Grauer and Grossman to "form its future business plan." (Application to employ.)

Mr. Grauer, who is President of Renaissance Capital, Ltd. is a C.P.A. who has assisted a Trustee in one other Chapter 7 bankruptcy case, but has not been professionally employed in any Chapter 11 case. Mr. Knopfler is the retired managing partner of the accounting firm of Seidman & Seidman, but has not performed accounting work in any bankruptcy case. Mr. Grossman has not been employed as a professional in any bankruptcy case.

The Debtor's President is Charles Wortman. His responsibilities include Debtor's "day-to-day operation," but the nature of such operation and his work thereon has not been described to the Court on this record.

Renaissance Capital, Ltd., a corporation in which Grauer, Grossman, and Knopfler are principals, "charges $200.00 per hour to assist distressed corporations or otherwise advise corporations in business plans" according to Grauer's affidavit. He does not disclose whether that company has sought to assist any company other than Debtor, nor does he disclose how it operates or what success or failure it may have experienced.

The Debtor through its attorney and President (who may be presumed to act with at least one careful eye on wishes of the three men who control Debtor) says that it wants to employ those three persons at salaries of $30,000 per year for each, based on minimum work hours of 400 hours per year ($75.00/hour). No written or detailed employment contract has been offered or suggested, and the purpose of employment is said to be (Application ¶ 3):

"... to perform certain tasks relating to [debtor's] current operations as well as tasks designed to assure the Company's future viability ..."

"... the development of a business plan based on direct marketing of the Rusty Jones name, trademark, product development and market research ...", and

"assistance and supervision of bookkeeping and financial functions relating to receivable collection, disposal of non-essential assets, lease negotiations, and supervision of debtor's personnel."

There is no description offered of the "current operations", what "tasks" are to be performed with respect thereto, or why Debtor's President can't do the necessary work now that Debtor is operating minimally if at all. Nor is there any explanation beyond that quoted as to what kind of business plan is contemplated or why the three persons or any one of them should be employed on salary to develop same. Finally, there are no details given as to the nature of present bookkeeping and financial functions, receivable collection needs and current efforts, what assets must be disposed of, what leases need to be negotiated, what personnel need to be supervised, or why these three men must be employed to do all that instead of the President.

Debtor originally sought to assume a management agreement with Renaissance Capital, Ltd. (in which the three to be employed are principals) to manage the Debtor at large expense. This motion was withdrawn after numerous questions were raised by the parties in interest and the Court.

No affidavits of disinterestedness have been filed for any of the three sought to be employed.

Counsel who seek to represent Distributor Creditor's Committee filed objections to the employment, but no summary judgment filings or affidavit. They assert that as principals of the holding company that owns Debtor, Messrs. Knopfler, Grauer, and Grossman have regularly participated in the Debtor's business without salary or compensation (appending exhibits tending to show that). Those objections also claim that Debtor is not presently engaged in any business despite paying "substantial salaries to its president and chief financial officer." Accordingly, counsel object to payment of unnecessary salaries to the three men, and argue that since they acquired Debtor's assets and liabilities for $1.00, they should expect financial return from a successful reorganization, not salaries prior to reorganization.

No party has offered as part of the summary judgment proceeding any current financials or copies of reports filed in bankruptcy. From the instant motion papers, the Court is left in the dark as to the real prospects for Debtor; the current cash flow; the relation of their work to the Plan that has been filed; future possible plans or pendency of current negotiations related thereto. And, of course, the Court is also left in the dark as to exactly what work the three would do and why they are necessary to do that work. On the present record, the Court is asked to rely primarily on the Debtor's "business judgment" which is apparently controlled by the same three persons sought to be employed.

Movant claims, without support by affidavit or Rule 12(1) statement, that since the motion to employ was filed, the three men have aided the Debtor by:

(a) interviewing and recommending accountants;

(b) negotiating with the Hiawatha property landlord for rent reduction and (c) for lease termination;

(d) negotiating an option to sell Debtor's furniture;

(e) assisting in the actual sale of that furniture;

(f) "interviewing three party vendors concerning the handling of claims filed against the Debtor and saving the estate approximately $600,000 over the original May and Spek proposal;" and

(g) "refining collection efforts to maximize accounts receivable collection."

Details of those matters are not supplied. Nor does Debtor say whether or not any compensation has yet been paid to the three men. That is significant because Debtor contends that court authorization is not required here for persons not sought to be hired under 11 U.S.C. § 327. It claims the right under § 1108 to employ these people to carry on Debtor's business.

## DISCUSSION

■ Persons who are not charged with administering the estate, but who assist the debtor in other capacities may not have to be employed under 11 U.S.C. § 327 even though their personal employment apart from what they do for the debtor is "professional". *In re Johns–Manville Corp.*, 60 B.R. 612 (Bankr.S.D.N.Y.1986) (lobbyist employed in normal course of Debtor's business is not "professional"). Section 1108 of the Bankruptcy Code authorizes a debtor in possession to operate the business in normal course without prior approval of the bankruptcy court for those activities. They may include the employment of nonadministrative employees.

In the case of *Johns–Manville*, the post petition debtor employed lobbyists. One of the creditors' committees objected to the employment, arguing that it must be approved under § 327(a) because the lobbyists were "professionals". The Bankruptcy Court found that the lobbyists were not professional persons for the purpose of the notice and hearing requirements of § 327(a). The lobbyists in question were employed in the ordinary course of business. The court adopted the definition of "professional person" set forth *In re Seatrain Lines, Inc.*, 13 B.R. 980 (Bankr.S.D. N.Y.1981).

In the context of a debtor proceeding, persons in occupations ordinarily considered professions are not necessarily professionals whose retention by the estate requires court approval. For the

purpose of section 327(a), "professional person" is limited to persons in those occupations which play a central role in the administration of the debtor proceeding. Court approval is required for the retention of attorneys, accountants, appraisers, auctioneers and persons in other professions intimately involved in the administration of the debtor's estate.

*Johns–Manville*, 60 B.R. at 620 *quoting Seatrain*, 13 B.R. at 980. Because the lobbyists were not involved in case administration, although professionals, they were not required to be employed under § 327(a). Their employment there was proper under § 1108.

Section 1108 of the Code does not place the limitation of disinterestedness on those employed pursuant to it.

The key distinction between § 327 and § 1108 employment is whether the professional person seeking employment will be administering or assisting with the administration of the case. Section 327 sets forth certain requirements including that of being a "disinterested" person, which must be met by professionals employed under that section. In contrast, § 1108 provides:

> Unless the court, on request of a party in interest and after notice and a hearing, orders otherwise, the trustee may operate the debtor's business.

■ Debtor now argues that § 327 does not apply to the employment of Grauer, Grossman and Knopfler because those individuals seek to be employed "to make business decisions concerning the Debtor's future operations ..." not to be "professionals" involved in administering this case or Debtor's plan. (Dr.Mem. p. 9.) Therefore, under § 1108 Debtor asserts that they need not be "disinterested." Debtor's counsel reproaches the U.S. Trustee for opposing the appointment, saying that "neither the court nor other individuals may interfere with reasonable business decisions made in good faith by the debtor-in-possession." *In re Airlift Int'l, Inc.*, 18 B.R. 787 (Bankr.S. D.Fla.1982); *In re Curlew Valley Associates*, 14 B.R. 506 (Bankr.D.Utah 1981). "The decision by the Debtor to utilize these

talented and experienced individuals is reasonable, as is the decision to compensate them in the manner proposed." (Dr.Mem. pp. 9–10). Not only is the U.S. Trustee reproached for questioning that "business" decision, but the Court is advised that any judicial rejection of that decision would be improper:

> The 1978 Bankruptcy Code removed the administration of cases from the judiciary. Section 1108 is vital to this change in that it removes the Court from the day to day responsibility of overseeing the management of the Debtor. If the Court were to rule on disagreements over business policy, it would have difficulty in later maintaining objectivity in legal disputes which touch on business policy.

(Dr.Mem. p. 10, citation omitted.) Accordingly, Debtor contends that the Court should not employ its authority under § 1108 ("unless the Court ... orders otherwise....") "to condition the ... management of the estate." (Dr.Mem. p. 10, citation omitted.)

The foregoing argument implies two assumptions: First, it assumes that the Debtor's business judgment in seeking to employ the three men is independent of the business judgment of those three men in seeking to be employed. In the light of the conceded facts that make clear that these same three men now control the Debtor through their holding companies, there is a serious question whether the Debtor's instant decision to hire these men is actually "made in good faith by the debtor-in-possession" so as to constitute a business decision entitled to great weight.

Second, the argument assumes that the work sought to be performed by the three men is nonprofessional and nonadministrative. On this record, that assumption is doubtful. The application makes clear that their work will be heavily administrative:

(a) "... to perform certain tasks relating to [debtor's] current operations as well as tasks designed to assure the company's future viability...."

(b) "... development of a business plan based on direct marketing the Rusty

Jones name, trademark, product development and market research...."

(c) "... will provide services by assistance and supervision of bookkeeping and financial functions relating to receivable collections, disposal of nonessential assets, lease negotiations and supervision of debtor's personnel." (Application pp. 1–2.)

If that were not enough to show the administrative nature of work proposed, we have the more current report (Dr.Mem. p. 4) that they have already been involved in interviewing potential accountants and recommending one of them; negotiating with the landlord; negotiating for sale of Debtor's furniture; interviewing third party vendors concerning handling of claims against Debtor; and efforts to maximize receivable collection.

It seems clear from the foregoing that Mr. Knopfler and Mr. Grauer are to use their extensive experience as professional accountants. (Since no background is given for Mr. Grossman, it is not clear whether or not he is a professional, and for that matter it is not clear why Debtor seeks to employ him or what his background is.)

At the outset, therefore, the Debtor's "business judgment" purportedly exercised under § 1108 may not be its judgment at all. This raises the question whether the Court should refuse permission even if this is truly an § 1108 motion. Further the persons involved are to do professional administrative work within the expertise of at least two of them, thereby suggesting that this is a motion to be considered under § 327 rather than § 1108.

Section 327(a) of the Bankruptcy Code permits Debtor, with court approval, to employ professional persons that do not hold or represent an interest adverse to the estate, i.e. "disinterested" persons. The Debtor does not claim that the three individuals were "on salary" within Section 327(b); thus they do not fall within the exception to Section 327(a)'s retention requirement. The Debtor admits that Messrs. Knopfler, Grauer, and Grossman are not disinterested. *See*, Application, paragraph 5. These individuals control the companies that control Rusty Jones, Inc. The term "disinterested person" is defined in § 101(13) of the Bankruptcy Code to include, *inter alia*, a person who "is not a creditor, an equity security holder, or an insider" (§ 101(13)(A)), "and does not have an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the debtor ..." § 101(13)(E).

Since Messrs. Knopfler, Grauer and Grossman admit they are not disinterested and § 327(a) of the Bankruptcy Code only permits employment of disinterested persons, it follows that if these persons are rendering or are to render professional services, they cannot be employed under § 327.

In moving for Court approval, and in delineating a central role for those individuals in the reorganization effort, the Debtor described two of the applicants as professionals and also suggested the professional character of most of the contemplated service. Further, the description of much of the service to be rendered and the relation of such service to the reorganization effort makes it abundantly clear the Applicants must be considered professionals at least for those tasks.

Although the term "professional" is left undefined in the Code, this term has regularly been interpreted to mean persons who play a central role in the administration of the debtor proceeding. *See Seatrain Lines*, 13 B.R. at 981. In that case, the court defined professional person for § 327(a) purposes as "persons in those occupations which play a central role in the administration of the debtor proceeding ..." *Id.* In other words, professionals "intimately involved in the administration of the debtor's estate." *Id.* Here the applicants anticipate performing tasks to "assure the company's future viability." These tasks include development of a business plan, marketing of the Rusty Jones name and trademarks, product development, and market research. Assistance and supervision of bookkeeping and finan-

cial functions relating to receivable collections will be rendered, as will services involving lease negotiations, disposal of nonessential assets, and supervision of personnel. Those tasks touch the full range of Debtor's present and future operations, the administration of its bankruptcy, the marshalling and disposition of its assets, its personnel, and its finances. These tasks involve the exercise of judgment and discretion. It is difficult to envision a more expansive role in the administration of this proceeding. These individuals would not become employees performing repetitive tasks. Further, it is obviously the profession of all three of these individuals, through their company Renaissance, to assist distressed corporations. *See,* Grauer Affidavit, ¶ 12; and Rule 12(1) Statement, ¶ 16. Their company's general charge for similar services is $200.00 per man hour worked.

It is significant that no written employment contract is a part of debtor's motion. The proposed work assignment is ambiguous and its duration is uncertain. Although there is the suggestion that the services are not expected to require more than a few months, there is no certainty that this will be so. There appears to be no upper limit on the duration or extent of participation by the three men save their annual hourly time commitment. Applicants would not be answerable to current management under the terms of the application as submitted, and they would apparently be making virtually all management decisions if employed. Indeed, the record suggests that they may be doing so now but want to be paid $30,000/year each for doing so.

The retention of companies performing management services has required court authorization in other cases. For example, a management company with similar powers and duties requested *nunc pro tunc* appointment in *In re Hospitality, Ltd.,* 86 B.R. 59 (Bankr.W.D.Pa.1988). The court in that case analyzed the insider management company's pre and post-petition conduct as well as its request under § 327(a), and refused to permit the employment. *Id.* at 65. *Accord In re Dola Int'l. Corp.,* 88 B.R.

950, 955 (Bankr.D.Minn.1988) (management company is a professional person within the meaning of § 327(a)); *In re Carolina Sales Corp.,* 45 B.R. 750, 753 (Bankr.E.D. N.C.1985). In the case at bar, the Court must consider whether there is any difference in the three men serving personally rather than through their management company as proposed in the earlier withdrawn motion.

The exception contained in § 327(b) involves professionals who were employed pre-petition "on salary." There is no allegation applicants were so employed. Given that applicants were not paid a salary prior to filing, court approval for retention would be required if § 327 applies here. *Cf. Carolina Sales,* 45 B.R. at 753 (nonsalaried management consultant requires § 327 retention); *In re Cummins,* 8 B.R. 701, 702 (Bankr.C.D.Cal.), *rev'd on other grounds,* 15 B.R. 893 (B.A.P. 9th Cir.1981) (court approval under § 327 required for retention of a real estate broker who claimed a commission and did not work on a salary basis pre-petition).

■ Further, *nunc pro tunc* retention of professionals is appropriate only where they can satisfy the disinterestedness requirement of § 327(a) and can prove extraordinary circumstances justifying their untimely retention. *F/S Airlease II, Inc. v. Simon,* 844 F.2d 99, 105 (3d Cir.), *cert. denied,* —— U.S. ——, 109 S.Ct. 137, 102 L.Ed.2d 110 (1988). If the debtor cannot demonstrate that these individuals qualify for employment, the *nunc pro tunc* issue is not reached.

The proscription against appointment of interested persons is to bar such persons from autonomous jobs where they can exercise discretion in favor of their adverse interests. *In re Frederick Petroleum Corp.,* 75 B.R. 774, 780 (Bankr.S.D.Ohio 1987). Here, Knopfler, Grauer and Grossman, if employed, are not proposed to be managers who answer to the President Mr. Wortman. Even if they were so proposed, given their control of Rustco, which owns Rusty Jones, Mr. Wortman would then be in the position of supervising those persons

who control his employment destiny. It is doubtful that he can do that now, and could not likely direct the persons who control his company if they were employed as Debtor's managers on salary.

## CONCLUSION

The present record is really quite sparse. It fails to inform the Court among other things exactly what business activity the Debtor is now engaged in; why its President cannot perform the tasks that the three are to perform; what work the President is doing in light of the tasks the three say they are doing; why all three are necessary to develop a plan and the role each would play; what steps have been taken to develop a plan; what are the current Chapter 11 duties that Debtor has performed; why they are necessary under the Plan that has been filed; and what opportunities for reorganization might warrant investment of $90,000 per year in the suggested employment. Indeed, the Court is still in the dark as to why and how the Debtor was purchased on the eve of bankruptcy and what agreements and arrangements, if any, related to that acquisition (other than the management agreement which was withdrawn) that might bear on the motion to employ.

Rather than deny the motion on the present record, however, the Court will afford Debtor and parties in interest an opportunity to flesh out the record at a hearing. The Court and other parties will have opportunity at the hearing to inquire into various relevant questions at that time. By separate order, such hearing will be set.

The Court will certainly not approve employment of professionals who are not disinterested in violation of § 327. It remains to be seen whether Debtor can demonstrate any non-professional task(s) that one or more of the three men might properly perform and may be needed to perform under § 1108 without causing the Court to forbid employment of these persons for lack of bona fide management judgment by the Debtor or other reasons under the circumstances.

At the forthcoming hearing, the Court will expect the U.S. Trustee to play an active role, particularly given the lack of activity by the two Committees in connection with the summary judgment motion. The U.S. Trustee's activity on the instant issues would be entirely appropriate even if the Committees had been active on these questions. Debtor concedes that the U.S. Trustee is to monitor administration and has standing to be heard on any issues (Dr. Reply Memo. p. 4.) The instant issues are to decide who will control administration of the Debtor. The U.S. Trustee would have been remiss had he not stated a position before the Court. The Court cannot agree with Debtor's critique of the fact that the Trustee took a position.