**In re Jeffrey GROSSMAN, Debtor.**

**Bankruptcy No. 92 B 1534.**

United States Bankruptcy Court,
N.D. Illinois, E.D.

Nov. 24, 1992.

David N. Missner, M. Gretchen Silver, Rudnick & Wolfe, Chicago, IL, for debtor.

Dean Harvalis, Chicago, IL, U.S. Trustee.

### MEMORANDUM OPINION ON DEBTOR'S MOTION TO DISQUALIFY THE JUDGE

JACK B. SCHMETTERER, Bankruptcy Judge.

Debtor Jeffrey Grossman has moved to disqualify this Judge pursuant to 28 U.S.C. § 455(a), and for transfer of this bankruptcy proceeding to another judge. The Motion rests entirely on statements contained in rulings in another judicial proceeding. The United States Trustee has opposed the Motion. Having considered the record and authorities, and submissions and arguments of counsel, the Debtor's Motion is denied.

### FACTUAL BACKGROUND

Debtor filed his pending voluntary petition for relief under Chapter 7 of the Bankruptcy Code on January 23, 1992. The

instant Motion was presented on June 29, 1992. Four years earlier, the Debtor was an investor in, and later manager of, a company that became a debtor in a proceeding pending before this Court, *In re Rusty Jones, Inc.*, 88 B 18708. During the course of the *Rusty Jones* bankruptcy case, following various hearings, several published decisions were issued in which Debtor was mentioned for his work with Rusty Jones. Debtor now cites portions of those transcripts and written decisions where references were made to his connection with Rusty Jones. Debtor argues that those statements constitute a basis for this Court's disqualification for asserted appearance of bias in Debtor's own bankruptcy proceeding, under 28 U.S.C. § 455(a). He does not assert bias under 28 U.S.C. § 144, nor does he assert grounds under 28 U.S.C. § 455(b).

The earlier statements made in rulings on matters in the *Rusty Jones* case and now relied on by the Debtor are the following:

In a decision reported as *In re Rusty Jones*, 109 B.R. 838 (Bankr.N.D.Ill.1989), the attempt of debtor to employ the investors, including Mr. Grossman, was denied. In the opinion of the Court such employment would have circumvented the rule against employing interested professionals involved in administering a debtor's business or plan. The attorneys for Rusty Jones argued that this was simply a business judgment in the course of managing the estate. The ruling stated:

> The foregoing argument implies two assumptions: First, it assumes that the Debtor's business judgment in seeking to employ the three men is independent of the business judgment of those three men in seeking to be employed. In the light of the conceded facts that make clear that these same three men now control the Debtor through their holding companies, there is a serious question whether the Debtor's instant decision to hire these men is actually "made in good faith by the debtor-in-possession" so as to constitute a business decision entitled to great weight.

> Second, the argument assumes that the work sought to be performed by the three men is nonprofessional and nonadministrative. On this record, that assumption is doubtful....

*Rusty Jones*, 109 B.R. at 842.

Mr. Grossman also cites *In re Rusty Jones*, 110 B.R. 362 (Bankr.N.D.Ill.1990), as another example of this Court's asserted bias. In that decision, a Chapter 11 reorganization plan proposed by Rusty Jones for confirmation was denied following hearing. The following Findings of Fact were then made:

> 6. Based on prior proceedings before this Court, the testimony of Wortman [past President of Rusty Jones], and the other facts found herein, it is clear that Debtor's present officers Grauer and Grossman have at all times during this case controlled Rusty Jones through their holding companies. Further, those persons made several efforts during this bankruptcy to bleed Rusty Jones of its assets so as to benefit one or more nondebtor businesses. Unless prevented, they will continue to do so in the future. They succeeded in doing so only in small ways in the past because of the vigilance of the U.S. Trustee and this Court's refusal to sanction such efforts when made by motion, and because the former president Wortman sometimes blocked them from doing so when they tried to do so out of court.

> 7. The persons who were in control of Rusty Jones did not exhibit sufficient concern for the fiduciary obligation that people who control Chapter 11 estates owe to the estate and the estate's creditors, nor did they take seriously their responsibility to preserve estate assets.

> 8. Had those "investors" who acquired control over a $3 million cash pot in return for a $1.00 investment been conscientious, they could have helped preserve this estate and pare down the overhead below current levels. Instead, they repeatedly tried to take untoward advantage of their position. The investors could have helped negotiate a confirmable plan. Instead, as set forth below, the proposed plan is a palpable over-

reaching by the controlling investors, and evidence presented was distorted by not requiring Debtor's valuation expert to take known evidence into account.

9. ... Other parts of that cash drain, however, resulted from the payment to Renaissance that was only partly repaid and from continued excessive overhead for many months longer than necessary.... The new "investors" during this bankruptcy made a number of efforts, some of which were successful, to obtain direct or indirect benefit from the cash assets with which Debtor started this bankruptcy. Most of those efforts were not for good business reasons and were contrary to the interests of the estate and its creditors. Some of these efforts were by motions to the Court before the instant hearing and some were proved by evidence during the hearing. Specifically:

(a) Rusty Jones moved the Court early in the case to authorize it to assume a management contract which had been entered into with Renaissance Capital, Ltd. during the two-week period between Rustco's "purchase" of Rusty Jones and Rusty Jones' commencement of this case. That management contract would have cost Rusty Jones substantial sums, amounting to several hundred thousands of dollars.... The Court believed then and still finds that the contract itself was unwarranted, without substantial benefit to the estate, and unnecessary. On the face of it, this episode raised the question whether the "investors" who purchased control of Debtor for a dollar were overreaching in their effort to get Debtor to fund an expensive "management" contract with their other company (Renaissance) although there was precious little remaining to manage and salaried officers were doing what was required.

(b) Shortly thereafter, Debtor moved the Court for authorization to add the three "investors," Knopfler, Grauer and Grossman, to Rusty Jones' payroll. Those persons were to be paid significant salaries by Rusty Jones ($30,000 each, totaling $90,000/annum) in return for services supposedly related to its reorganization, including both management services and development of a business plan to market Debtor.... That motion was denied, the Court finding that the supposed services were of little value to the estate or its creditors, and the individuals were disqualified as not disinterested. (Opinion filed August 24, 1989.) Apart from the legal and other reasons then given, the motion was another improper attempt to strip Rusty Jones of significant assets without any demonstrated necessity or benefit to Debtor in return. The motion to approve it was outrageous. The Court felt so strongly that the motion was inappropriate and totally without value to Debtor that it denied Rusty Jones' counsel any compensation for that work.

.      .      .      .      .

25. Rusty Jones' present management has no experience in the company's line of business. Paying the present level of salaries to this management is an excessive and unwarranted drain of funds from the estate, particularly since the only activity of Debtor is the one-person operation of Rusty's Place.

*Rusty Jones*, 110 B.R. at 367–68, 372.

Next, Mr. Grossman refers to the opinion *In re Rusty Jones, Inc.*, 134 B.R. 321 (Bankr.N.D.Ill.1991), as further asserted evidence of this Court's bias against him. The attorneys for Rusty Jones had applied for compensation and reimbursement of expenses. Previously undisclosed conflicts of interest by counsel came to light and otherwise allowable fees were reduced by 60% as a sanction. In Findings of Fact entered following a hearing, some of the past events involving the *Rusty Jones* bankruptcy proceeding were reviewed:

16. After the effort to obtain approval of the Management Agreement aborted, Grossman and Grauer sought to put themselves and their associates on the Rusty Jones payroll....

17. The Application to Approve the Employment of Grossman, Grauer, and

Knopfler was filed in April, 1989. The filed version of the motion was not shown to Wortman, and this motion was objected to on the same grounds as the Motion to Assume the Management Agreement. This Court found the expensive terms and substance proposed by the motion so one sided and unhelpful to the estate as to be "outrageous." *Id.* 110 B.R. at 368. Much Shelist was denied any compensation for its work on the motion because it did not benefit the estate at all. *Id.*

.    .    .    .    .

20. It appears that an even better leasing arrangement could have worked out for the Debtor. Wortman [past President of Rusty Jones] basically worked out of his home, so there was only one Rusty Jones employee at the Monroe location (Lynn Refer, who was simultaneously Rusty Jones' Vice–President and an employee of Grossman for work done on the Pioneer and Woehrmyer bankruptcies). While Rusty Jones was in this suite, the location housed Renaissance Capital, Grossman, Grauer, North American, Woehrmyer Business Forms, other Grossman related entities, and the law firm of Engerman and Brown. The total rent for the suite was $22,000 per month. Thus, it appears that Rusty Jones was paying for an undue percentage of the underlying lease.

.    .    .    .    .

25. It is clear from this and earlier proceedings that Grauer and Grossman have controlled the Debtor at all times during the bankruptcy proceedings, and that they made several efforts to bleed Rusty Jones of its assets so as to benefit themselves to the detriment of the creditors. *See In re Rusty Jones,* 110 B.R. at 367. During the period described in these Findings, the interests of Grossman and Grauer diverged from interests of the estate of Debtor and its creditors.

*Rusty Jones,* 134 B.R. at 330–32.

Mr. Grossman also refers to Conclusions of Law in that decision wherein this Court found Mr. Grossman's interests to be ad-

verse to those of Rusty Jones, citing that as evidence of potential bias:

58. Much Shelist argues that a connection with a party in interest is not an open ended requirement; it is limited to the representation of clients who have economic interests that may be adverse to the debtor. An implied condition to this argument is that Grauer and Grossman's economic interests were not and could not have been adverse to Rusty Jones. However, it is clear from the proceedings of this case, that Grauer and Grossman's interest were adverse to the Debtor....

59. It is also clear that their interests have been adverse to the Debtor from the time those individuals acquired control of the Debtor until the time that the fifth plan was confirmed, and that Much Shelist consistently acted in their individual interests.... Mr. Chatz and Morrie Much then participated in the acquisition negotiations and in creating the Management Agreement that this court found to be "unwarranted, without substantial benefit to the estate, and unnecessary." 110 B.R. at 368.

60. Much Shelist continued to act in the interests of Grossman and Grauer in every step of the bankruptcy proceedings including the motion to assume the Management Agreement, the motion to employ Grossman, Grauer, and Knopfler, the disputes between the shareholders of Rustco, the moves to 55 W. Monroe and to MacArthur Blvd., and the formation of the plans of reorganization....

61. Attorneys for a Chapter 11 corporate debtor owe a fiduciary duty to the corporation and not to the employees, officers, directors, or dominant shareholders of the corporation or of a controlling parent company.... Thus, counsel for the estate cannot close their eyes when the debtor's principals are not acting in the best interests of the estate and its creditors, and certainly cannot aid the adverse activity.... Instead, debtors' attorneys must fulfill their fiduciary duties in these situations and take whatever steps are necessary to oppose the detrimental activity.

*Rusty Jones*, 134 B.R. at 343 (citations omitted).

Mr. Grossman also refers to the transcript of a hearing in connection with the proceeding at hand where this Court was informed by Mr. Grossman's counsel of this Debtor's connection to Rusty Jones:

MR. MARTINO [Counsel for Mr. Grossman]: Your Honor, there is one additional factor that I—I believe the Court should be apprised of in this case. Mr. Grossman, at least in part, has appeared before this Court previously in the Rusty Jones case. I am not—I don't know whether this Court was aware that this is the same Mr. Grossman. There has been one—

THE COURT: You mean as a lawyer?

MR. MARTINO: No, your Honor, he was a principal in Rusty Jones.

THE COURT: Well, so.

MR. MARTINO: And this Court has already entered an opinion in the Rusty Jones case accessing his veracity and making other statements regarding Mr. Grossman.

THE COURT: So.

MR. MARTINO: I do not know whether this Court was aware of it, and what actions if any this Court would want to take.

THE COURT: I was not aware of it. Now that you have made me aware of it, what do you suggest?

MR. MARTINO: I suggest nothing, your Honor, at this point. We have not decided whether any action is appropriate on our behalf. We wanted the Court to know about it. . . .

THE COURT: Well, thank you. I've got to tell you that I didn't remember the name. . . . If you feel that there is anything involved in this case that is disqualifying, you should make whatever motion you feel is appropriate. . . .

Debtor's Motion to Disqualify, Ex. 2 (Transcripts of the Proceedings before this Court, April 23, 1992, 2:00 p.m., *In re Jeffrey Grossman*, No. 92 B 1534). Movant further refers to a transcript from May 29, where an affidavit of Mr. Grossman filed and sealed in the *Rusty Jones* case, at Mr. Grossman's request, became involved in the present case. Counsel infers that there is significance in this Court's recognition then of Mr. Grossman as having been involved in the *Rusty Jones* case. Apart from the statement of counsel to that effect a month earlier, it does not seem remarkable that, upon review of the Grossman affidavit filed in *Rusty Jones*, one should conclude that Mr. Grossman was involved in that case.

All of the foregoing substantive Findings of Fact and rulings or statements of this Court now complained of were necessarily made in the course of judicial rulings on matters presented for judicial decision in *Rusty Jones*. All references therein to Mr. Grossman related only to his connections with the debtor Rusty Jones. Nothing set forth in the cited statements related to Mr. Grossman's conduct or veracity in other businesses, or referred to him as a party in other litigation. There is no assertion of any personal contact between Mr. Grossman and this Court or any member of the chambers staff. Thus, claims of apprehension that this Court has predilections as to his character and veracity are based solely on the quoted judicial statements in the course of issue adjudication in the *Rusty Jones* case.

Three Adversary actions related to this bankruptcy proceeding are pending against Debtor seeking to bar his discharge [1] and dischargeability of alleged debts.[2] None of these appear on their face to have any relation to matters considered in the *Rusty Jones* case, nor does movant assert that they do. Movant has not filed any motions to disqualify in those related cases.

Indeed, movant has cited no issue present in this bankruptcy proceeding, or which might be present here or in the related Adversary cases, that involves facts or matters decided in the *Rusty Jones* case.

---

**1.** *Weese v. Grossman*, No. 92 A 575.

**2.** *National Security Bank v. Grossman*, No. 92 A 573; and *Westbank v. Grossman*, No. 92 A 1242.

## DISCUSSION

### Jurisdiction

This matter is before the Court pursuant to 28 U.S.C. § 157, and is referred to here under Local District Court Rule 2.33. The Court has subject matter jurisdiction under 28 U.S.C. § 1334, and this is a core proceeding under 28 U.S.C. § 157(b)(2)(A).

### General Recusal Standards

Debtors seek disqualification pursuant to 28 U.S.C. § 455(a), which provides that "[a]ny justice, judge, or magistrate of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." The test for recusal under § 455(a) is whether "an objective, disinterested observer fully informed of the facts [of the case] ... would entertain a significant doubt that justice be done." *Union Carbide Corp. v. U.S. Cutting Service*, 782 F.2d 710, 715 (7th Cir. 1986), *citing, Pepsico, Inc. v. McMillen*, 764 F.2d 458, 460 (7th Cir.1985).

■ A judge is not disqualified under § 455(a) merely because a litigant has transformed his fear of an adverse decision into a fear that the judge will not be impartial. *Idaho v. Freeman*, 507 F.Supp. 706, 722 (D.Idaho 1981), *citing* S.Rep. No. 93-419, 93rd Cong., 1st Sess.1973, p. 5. On the other hand, a judge's personal view of his or her impartiality is not a basis for ruling on a recusal motion. As Judge Shadur explained in *Hampton v. Hanrahan*, 499 F.Supp. 640, 645 (N.D.Ill.1980), *appeal dismissed, Hampton v. Chicago*, 643 F.2d 478 (7th Cir.1981), "[t]hough I am morally certain that I would in fact be impartial in this proceeding, that is not the standard; the test is rather whether my impartiality 'might reasonably be questioned.' "

■ A necessary corollary to the objective "reasonable person" standard is that recusal may not be based on frivolous, speculative, or irrational grounds. The Seventh Circuit has expanded on this concept in *Matter of Nat. Union Fire Ins. Co. of Pittsburgh*, 839 F.2d 1226, 1229 (7th Cir.1988), stating,

Judges have an obligation to litigants and their colleagues not to remove themselves needlessly, ... because a change of umpire in mid-contest may require a great deal of work to be redone ... and facilitate judge-shopping.

(citation omitted). *See also, New York City Housing Development Corp. v. Hart*, 796 F.2d 976, 980–81 (7th Cir.1986). Thus, a judge has a duty not to disqualify when faced with meritless motions to recuse or disqualify. *See General Motors Acceptance Corp. v. Long Chevrolet, Inc.*, 1989 Bankr.Lexis 72 (Bankr.N.D.Ill. Jan. 24, 1989).

Here, the only substantive sources of asserted reasonable basis to question impartiality rest on rulings in the *Rusty Jones* proceeding. Therefore, the first issue presented is whether any knowledge of a party gained in a prior judicial proceeding constitutes or can be grounds for recusal under § 455(a). Neither the Supreme Court nor the Seventh Circuit has directly addressed this issue. In prior opinions, this Court has held that recusal must be based on an extra-judicial source. *See In re Nowak*, 143 B.R. 154 (Bankr.N.D.Ill. 1992); *In re Chapman*, 1992 WL 206246, 1992 Bankr.Lexis 1279 (N.D.Ills. Aug. 7, 1992); and *In re Long Chevrolet*, 1989 Bankr.Lexis 72 (N.D.Ill., Jan. 24, 1989). Debtor argues that the better view is the approach taken by the First Circuit panel in *United States v. Chantal*, 902 F.2d 1018 (1990), when considering disqualification motions under § 455(a). Therefore, it is appropriate to make a full analysis of all authorities discussing the "extra-judicial source" as a possible basis for disqualification under § 455(a).

### Can § 455(a) Disqualification Be Based on Prior Judicial Rulings?

■ In *Chantal*, a criminal defendant pled guilty to drug trafficking charges. At the sentencing hearing, the judge commented on the defendant's character, saying, "he is an unreconstructed drug trafficker; and I can have no confidence whatever that he will change his ways in the future." *Id.* at 1020. The defendant had again been caught selling drugs shortly

before the sentencing hearing. The same judge was assigned to preside over the defendant's trial on the new drug trafficking charges that arose out of the latter incident, and defendant moved for recusal under § 455(a). The motion was denied on grounds that the alleged bias did not arise from an extra-judicial source. *Id.* at 1020, n. 3.

The First Circuit reversed this ruling and remanded, holding:

> We recognize that the newly amended recusal provision, 28 U.S.C. § 455(a) now *permits* disqualification of judges even if alleged prejudice is a result of *judicially* acquired information in contradistinction to the prior law that *required* a judge to hear a case unless he had developed preconceptions by means of extra-judicial sources. The rationality for the amendment to the statute, as noted in [*United States v. Cowden*, 545 F.2d 257, 265 (1st Circ.1976)] was "to foster public confidence in the judicial system" by requiring disqualification based on "a reasonable factual basis for doubting the judge's impartiality".

*Id.* at 1022–23, *quoting United States v. Cepeda Penes*, 577 F.2d 754, 758 (1st Cir. 1978).

The First Circuit first focused on the difference between § 455(a) and 28 U.S.C. §§ 144 and 455(b). *Chantal*, 902 F.2d at 1022–24. Section 144 provides in relevant part:

> Whenever a party to any proceeding in a district court makes and files a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of an adverse party, such judge shall proceed no further therein, but another judge shall be assigned to hear such proceeding.

Finding bias pursuant to this section requires either an affidavit or other clear evidence of partiality. Section 455(b) provides in relevant part that judges must disqualify themselves when they have a "personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding." The *Chantal* court found that only §§ 144 and 455(b) require a finding of bias-in-fact arising from an extra-judicial source of bias. *Id.* at 1022, n. 9.

The First Circuit stated that § 455(a) goes further than § 455(b) by attacking the appearance of bias, not just bias-in-fact. *Id.* at 1023. Since appearance of bias is a broader standard than bias-in-fact, that court reasoned that § 455(a) should be treated with more latitude, and that previous judicial proceedings could be examined as potential sources of bias.

The First Circuit panel in *Chantal* also emphasized the underlying policy for implementing § 455(a). Section 455(a) was amended in 1974 so as to avoid even the appearance of partiality within the judiciary. *Id.* at 1023. To give full strength to this policy, the *Chantal* panel found it necessary to allow impartiality to be questioned from any source, including previous judicial proceedings. *Id.* at 1024. Accordingly, the First Circuit requires recusal under § 455(a) when a reasonable non-litigant third person would find from *any* source that the judge appears to be biased. *Id.* at 1024.

The First Circuit has not been unequivocal in its rulings on this subject. A panel of that Circuit held in *United States v. Cowden*, 545 F.2d 257, 265 (1st Cir.1976), *cert. denied*, 430 U.S. 909, 97 S.Ct. 1181, 51 L.Ed.2d 585 (1977), that "[p]rior adverse rulings alone cannot, of course, be the basis for a motion to recuse." In *United Union of Roofers, etc., Union No. 33 v. Meese*, 823 F.2d 652, 659 (1st Cir.1987), another panel of that Court held that "[p]articipation in prior proceedings involving the same ... parties does not in itself constitute grounds for disqualification." *See also In re Cooper & Lynn*, 821 F.2d 833 (1st Cir., 1987) ("It is a judge's job to make credibility determinations and inferences of partiality do not arise simply because the job is performed. Nor are judges required to mince words.").

Two other circuits have analyzed judges' comments in prior proceedings to determine if grounds for disqualification were present. In *Frates v. Weinshienk*, 882

F.2d 1502 (10th Cir.1989), a bankruptcy judge entered an order confirming the Chapter 11 plan of reorganization for debtor Kaiser Steel. Subsequently, debtor initiated Adversary proceedings which were assigned to the same judge. The defendants in the Adversary proceedings then petitioned the Tenth Circuit for a writ of mandamus, seeking to compel the reassignment of those proceedings to another judge pursuant to § 455(a). The Tenth Circuit panel in *Frates* set this standard for considering whether to order the reassignment:

> [R]ecusal is necessary if there is evidence of actual bias, if the bankruptcy judge by words or actions reasonably appears to have prejudged adversarial proceedings over which [he] is to preside, or if the judge appears "boxed in" by prior rulings such that he will be forced to reach a certain result in an adversarial proceeding regardless of the merits.

*Id.* at 1504. The court then examined the judge's orders entered in the bankruptcy case and rejected the petition. *Id.* at 1504–07. However, the court also noted that familiarity with defendants or with facts of a case, where such familiarity arises from earlier participation in judicial proceedings, is not sufficient to disqualify a judge from presiding at a later trial. *Id.* at 1506, *citing In re Corrugated Container Antitrust Litigation,* 614 F.2d 958, 965 (5th Cir.) (footnote omitted), *cert. denied,* 449 U.S. 888, 101 S.Ct. 244, 66 L.Ed.2d 114 (1980).

In *Haines v. Liggett Group, Inc.,* 975 F.2d 81 (3rd Cir., 1992), the District Court judge began a memorandum opinion on a preliminary issue by expressing his views that were found to prejudge the ultimate merits of issues in that case. The Third Circuit found that these comments created an appearance of partiality and therefore directed that the case be reassigned to a new judge. This opinion did not mention § 455(a), and the recusal order could well have been based on § 455(b) since the judge was apparently found to have demonstrated a personal bias in his opinion. To the extent that the recusal order could have been based on § 455(a), it conforms to the Tenth Circuit view in *Frates* on that provision, because the trial judge's comments could be said to have "boxed" himself into finding for the plaintiff on an ultimate issue in the case.

The foregoing views of § 455(a), which allow the consideration of former judicial decisions in a disqualification motion, are limited to the First, Third, and Tenth Circuits. These are minority views that conflict with other circuit courts that have spoken on their interpretation of § 455(a). Justice White noted in his dissent from denial of certiorari in *Waller v. United States,* — U.S. —, —, 112 S.Ct. 2321, 2322, 119 L.Ed.2d 239 (1992),

> The Ninth Circuit explicitly rejected the First Circuit's contrary approach in [*Chantal*] where the First Circuit emphasized that ... "the source of the asserted bias/prejudice in a § 455(a) claim can originate explicitly in judicial proceedings." ... That the First Circuit would consider appearances of judicial bias and prejudice originating in judicial proceedings conflicts not only with the Ninth Circuit, but also with the Fourth, Fifth, Sixth, and Eleventh Circuits.... (citations omitted).

Indeed, the Fourth,[3] Fifth,[4] Sixth,[5] Ninth,[6] Eleventh,[7] and D.C. Circuits [8] require that recusal be based on an extra-judicial source; that is, the court's bias must derive

**3.** *United States v. Mitchell,* 886 F.2d 667 (4th Cir.1989); *In re Beard,* 811 F.2d 818 (4th Cir. 1987).

**4.** *United States v. Merkt,* 794 F.2d 950 (5th Cir. 1986), *cert. denied,* 480 U.S. 946, 107 S.Ct. 1603, 94 L.Ed.2d 789 (1987); *Davis v. Board of School Commissioners of Mobile County,* 517 F.2d 1044 (5th Cir.1975).

**5.** *United States v. Sammons,* 918 F.2d 592 (6th Cir.1990).

**6.** *United States v. Waller,* 951 F.2d 364 (9th Cir.1991), *cert. denied,* — U.S. —, 112 S.Ct.

2321, 119 L.Ed.2d 239 (1992); *United States v. Monaco,* 852 F.2d 1143 (9th Cir.1988), *cert. denied,* 488 U.S. 1040, 109 S.Ct. 864, 102 L.Ed.2d 988 (1989); *United States v. Frias–Ramirez,* 670 F.2d 849 (9th Cir.1982).

**7.** *McWhorter v. Birmingham,* 906 F.2d 674 (11th Cir.1990); *Jaffe v. Grant,* 793 F.2d 1182 (11th Cir.1986), *cert. denied,* 480 U.S. 931, 107 S.Ct. 1566, 94 L.Ed.2d 759 (1987).

**8.** *Liberty Lobby, Inc. v. Dow Jones & Co., Inc.,* 838 F.2d 1287 (D.C.Cir.), *cert. denied,* 488 U.S.

from something other than what the judge learned by participating in the proceedings. *See* Comment, *Questioning the Impartiality of Judges: Disqualifying Federal District Court Judges Under 28 U.S.C. § 455(a)*, 60 Temple L.Q. 697, 714 (1987) (discussing the extra-judicial source of bias requirement in § 455(a) and authorities supporting this requirement).

The majority view is the better-reasoned approach. First, these courts properly recognize that the 1974 amendments to § 455 did not change the requirement of extra-judicial source of bias. *See United States v. Haldeman*, 559 F.2d at 132–34, n. 297:

> For a long time before enactment of new § 455(a) in 1974, the judicial understanding of § 144 and old § 455 was that they were to be confined in operation to extra-judicial conduct or conditions ... Nothing we have observed in the legislative history of new § 455(a) suggests that this construction should be overturned.

Prior to the 1974 amendment by Public Law 93–512, 28 U.S.C. § 455 provided,

> Any justice or judge of the United States shall disqualify himself in any case in which he has a substantial interest, has been of counsel, is or has been a material witness, or is so related to or connected with any party or his attorney as to render it improper, in his opinion, for him to sit on the trial, appeal, or other proceedings therein.

After the 1974 amendment, 28 U.S.C. § 455 now provides, in relevant part,

> (a) Any justice, judge, magistrate or referee in bankruptcy of the United States shall disqualify himself in any case in which his impartiality might reasonably be questioned.
>
> (b) He shall also disqualify himself in the following circumstances:
>
> > (1) Where he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding....

The amended § 455 followed the language of Canon 3(C)(1) of the Code of Conduct for

United States Judges, which lists circumstances in which a judge must recuse. H.R.Rep. No. 1453, 93rd Cong., 2nd Sess., *reprinted in* 1974 U.S.Code Cong. & Admin.News 6351, 6351–57; *United States v. Haldeman*, 559 F.2d at 132 n. 297. Canon 3(C)(1) provides in relevant part: [9]

> (1) A judge should disqualify himself in a proceeding in which his impartiality might reasonably be questioned, including but not limited to circumstances where:
>
> > (a) he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding....

As stated in the House Report accompanying the 1974 amendment to § 455(a), .

> The purpose of the amended bill is to amend section 455 of title 28, United States Code, by making the statutory grounds for disqualification of a judge in a particular case conform generally with the recently adopted canon of the Code of Judicial Conduct which relates to disqualification of judges for bias, prejudice or conflict of interest.

H.R.Rep. 1453, *supra*. Indeed, the only notable opposition to the proposed amendment came from the Judicial Conference of the United States, which took the position that it was unneeded in light of the Conference's adoption of the Code of Judicial Conduct. *See Letter to Congressmen Rodino, Chairman, Committee on the Judiciary, from the Director of the Administrative Office of the U.S. Courts, reprinted in* 1974 U.S.Code Cong. & Admin.News at 6359.

The only substantive legal change to § 455(a) in 1974, other than adoption of the Code of Conduct, was to change to an objective test of disqualification. *See Davis v. Board of School Commissioners*, 517 F.2d 1044, 1052 (5th Cir.1975) ("The new language [of § 455] was designed to substitute the reasonable factual basis-reasonable man test in determining disqualifi-

---

825, 109 S.Ct. 75, 102 L.Ed.2d 51 (1988); *United States v. Haldeman*, 559 F.2d 31 (D.C.Cir.1976) (*en banc*), *cert. denied*, 431 U.S. 933, 97 S.Ct. 2641, 53 L.Ed.2d 250 (1977).

**9.** The quoted language of Canon 3(C)(1) has not changed between 1974 and now.

cation for the subjective 'in the opinion of the judge' test in use prior to the amendment").

The extra-judicial source requirement for finding bias under § 455 was firmly established prior to the amendment to § 455. *Id.* at 1052, and cases cited, and there is no indication in either the text or legislative history of § 455 that this requirement was altered. *United States v. Haldeman,* 559 F.2d 133 n. 297; *Davis,* 517 F.2d at 1052.

Several of the courts that require extra-judicial source of bias cite *United States v. Grinnell Corp.,* 384 U.S. 563, 583, 86 S.Ct. 1698, 1710, 16 L.Ed.2d 778 (1966), to support their positions. *See, e.g., United States v. Frias–Ramirez,* 670 F.2d 849, 853, n. 6 (9th Cir.1982); *In re Beard,* 811 F.2d 818, 827 (9th Cir.1987). In *Grinnell,* a party argued under § 144 that the trial judge had a personal bias and prejudice against it because of the judge's comments on the evidence made during pre-trial status conferences. 384 U.S. at 582–83, 86 S.Ct. at 1710. The Supreme Court opinion rejected this position, stating that "[t]he alleged bias and prejudice to be disqualifying must stem from an extrajudicial source and result in an opinion on the merits on some basis other than what the judge learned from his participation in the case." *Id.* at 583, 86 S.Ct. at 1710. This has long been the position of the Supreme Court. *See, e.g., Berger v. United States,* 255 U.S. 22, 31, 41 S.Ct. 230, 232, 65 L.Ed. 481 (1920) ("the bias or prejudice which can be urged against a judge must be based on something other than rulings in the case"). Since the same standard for demonstrating prejudice applies under both § 144 and § 455, *Davis,* 517 F.2d at 1052, *Grinnell* remains applicable authority on the § 455 issue presented on the instant Motion.

The majority approach recognizes the potential burden on the judicial process that could occur if § 455(a) is applied too broad-

ly. *See, e.g., Haldeman,* 559 F.2d at 133 n. 297:

> The appearance-of-impropriety standard in terms summons a disqualification, not merely when the judge's impartiality might somehow be questioned, but only when it may *reasonably* be questioned. We think reasonableness of the challenge must take due account of the effect which its acceptance will have on the judicial system. So drastic would be the impact that we are unwilling to ascribe to ethical and legislative formulators of that standard a purpose to direct it toward judicial rulings on questions of law.

The legislative decision to leave untouched the extra-judicial source of bias requirement represented Congressional balancing of the need to avoid appearance of partiality against the potential for forum shopping and prolonging of cases.[10] This allows judges to perform their functions without fear that expressions of judicial opinions will result in disqualification. In bankruptcy cases particularly, a judge will find it necessary to make many fact determinations in the underlying bankruptcy, and in related contested proceedings and Adversary proceedings. If each determination could later be asserted as basis for recusal, the multiple actions inherent in bankruptcy cases might be asserted to require multiple reassignments of cases and a general slowdown of administration. Litigants could try to use plain-speaking rulings by a judge as a basis to demand recusal. *See* 60 Temple L.Q. at 715.

Other Judges in this District have consistently followed the majority rule, holding that extra-judicial bias is required to recuse under § 455(a). *See In re Betts,* 143 B.R. 1016, 1020 (Bankr.N.D.Ill.1992) (Squires, B.J.) ("the asserted bias or prejudice must be personal and arise from extra-judicial matters."; *Avitia v. Metropolitan Club of Chicago,* 1990 WL 205278, 1990 U.S. Dist.

---

**10.** *See* H.R.Rep., *supra,*

... in assessing the reasonableness of a challenge to his impartiality, each judge must be alert to avoid the possibility that those who would question his impartiality are in fact seeking to avoid the consequences of his expected adverse decision. Disqualification for lack of impartiality must have a reasonable

basis. Nothing in this proposed legislation should be read to warrant the transformation of a litigant's fear that a judge may decide a question against him into a "reasonable fear" that the judge will not be impartial. Litigants ought not have to face a judge where there is a reasonable question of impartiality, but they are not entitled to judges of their own choice.

Lexis 16922 (N.D.Ill. Dec. 13, 1990) (Bobrick, M.J.) ("Bias must be from an extrajudicial source"); *Williams v. Balcor Pension Investors*, 1990 WL 205805, 1990 U.S. Dist. Lexis 15927 (N.D.Ill., Nov. 28, 1990) (Rovner, J.) (". . . those are extrajudicial things. I can't consider that sort of extraneous matter."); *Clayton v. Sklodowski, et al.*, 1987 WL 11834, 1987 U.S. Dist. Lexis 4526 (N.D.Ill., May 29, 1987) (Nordberg, J.) ("I do not have any extrajudicial knowledge. . . . Therefore, I do not find . . . sufficient grounds for recusing myself in this case."); *National Union Fire Insurance v. Continental Illinois Corp.*, 639 F.Supp. 1229, 1236 (N.D.Ill.1986) (Shadur, J.) ("under 28 U.S.C. § 455(a) . . . a controversy between a trial judge and an attorney for parties to an action would not require disqualification of the judge in the absence of showing of bias or personal prejudice to the parties."); *In re X–Cel, Inc.*, 61 B.R. 691, 695 (N.D.Ill.1986) (Aspen, J.) ("Antipathy to an attorney is insufficient grounds for disqualification bias."); *Clay v. Doherty*, 608 F.Supp. 295, 299 (N.D.Ill.1985) (Shadur, J.) ("Only when the extrajudicial associations are in the broadest sense intimate . . . or when they afford prior knowledge of facts that weigh heavily in the case, do reasonable people begin to doubt the judge's capacity to maintain the separation between judicial and extrajudicial knowledge."); *United States v. PATCO*, 527 F.Supp. 1344, 1359 (N.D.Ill.1981) (Aspen, J.) ("facts learned by the judge while acting in his judicial capacity cannot form the basis for disqualification").

Therefore, based on the text and legislative history of § 455(a) and the greater weight and logic of authority discussing that provision, it is clear that an alleged source of bias must generally arise from an extra-judicial source in order to mandate recusal under § 455(a). Since no extrajudicial source was cited by movant, under that test alone, the Motion would be denied.

*If the minority rule applies in the Seventh Circuit, does the cited history in Rusty Jones warrant disqualification?*

■ Since the Seventh Circuit Court of Appeals has not yet ruled on the issue, it is appropriate to review the Motion alternatively under the minority rule. However, even assuming *arguendo* propriety of a motion based on prior judicial rulings, recusal still is not appropriate here. First, of course, the facts in the instant case are clearly distinguishable from the facts in *Chantal*. In *Chantal*, the judge went out of his way to comment negatively on the inclination of the defendant to deal in drugs. The judge's comment evidenced an opinion that bore directly on the merits of the next case charging that defendant as a drug dealer. Also, the judge's comment was not a judicially required finding of fact, but an unnecessary characterization made before sentencing the defendant. Likewise, in *Haines*, the judge's comments were considered to be gratuitous and evidence of his opinion on the substantive merits of the case before him.

Unlike *Chantal* or *Haines*, this Court did not go out of the way to comment on Mr. Grossman's character in the *Rusty Jones* opinions. In fact, there was not even any comment on Mr. Grossman's character, but the opinions instead commented on his actions involving the estate in *Rusty Jones* and his duties therein. The Court merely fulfilled its judicial duty to make findings of fact and come to conclusions based on those facts. This is the job of a court and partiality does not appear because this job was performed.

For a reasonable and informed person to doubt this Court's impartiality, there would need at least to be a connection between the facts found and observations on these facts stated in the *Rusty Jones* decision, and the Debtor's current bankruptcy case or its related Adversary proceedings. Debtor makes no allegation or argument to link findings in the former proceedings with issues in any of the present proceedings, nor can the Court find any such link. He argues rather that findings as to his veracity may be required in his bankruptcy proceedings, and suggests that a reasonable person could conclude that his veracity has been prejudged. That argument fails not only because of its vagueness, but also because no finding was made as to his

veracity in the *Rusty Jones* proceedings. A rejection of specified business practices and debtor's motions in a Chapter 11 proceeding, even a strong rejection thereof, is hardly a verdict condemning Mr. Grossman's character. This Court did not prejudge Mr. Grossman's veracity, nor is it "boxed in" to any judgment regarding his personal affairs or veracity. Therefore, even under standards of the minority rule, judicial statements made in *Rusty Jones* proceedings would not lead a reasonable and informed person to apprehend that this Court no longer appears to be impartial.

## CONCLUSION

The Motion has no merit. For reasons set forth above, by order entered separately this date, Debtor's Motion for recusal and transfer under 28 U.S.C. § 455(a) is denied.